FILED
JAMES BONINI
CLERK

04 MAR 11 PM 12: 27

INFORMATION COPY
MANDATE NOT YET ISSUED

DIS. CT. # 00-412
pt. W ~

FILED

MAR 1 0 2004

LEONARD GREEN, Clerk

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 02-3602

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

NOT RECOMMENDED FOR FULL-TEXT
PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a proceeding in a court
in the Sixth Circuit. If cited, a copy must be served on other
parties and the Court.
This notice is to be prominently displayed if this decision
is reproduced.

| | |
|---|---|
| PETER M. HAGAN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) ON APPEAL FROM THE UNITED |
| WARNER/ELEKTRA/ATLANTIC | ) STATES DISTRICT COURT FOR THE |
| CORPORATION, | ) SOUTHERN DISTRICT OF OHIO |
| | ) |
| Defendant-Appellee. | ) |

Before: NELSON, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge.  Peter M. Hagan challenges the district court's grant of summary

judgment to his former employer, Warner/Elektra/Atlantic Corporation ("WEA"), on his reverse

race, reverse gender, and age discrimination claims.  Hagan alleges that discrimination motivated

WEA's decision to demote him in 1995 and then to deny him a transfer in 1999.  Because Hagan

adduced neither direct evidence of discrimination nor evidence that WEA's proffered

nondiscriminatory reasons were pretextual, we affirm the district court's judgment.

I

In the early 1990s, Hagan worked as Branch Sales Manager of the Cleveland branch of WEA,

a music distribution company.  His position ranked second to Branch Manager Richard Froio. In

1995, WEA downgraded the Cleveland office from a branch office to a district office and changed

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

its personnel and management structure. Though Hagan remained second in charge of the Cleveland office, his title changed from Branch Sales Manager to Field Sales Manager. And because Froio left WEA altogether, the top position in the Cleveland office—District Sales Manager—became available.

To fill the District Sales Manager vacancy, WEA hired Dale Hill, an African-American sixteen years younger than Hagan, a Caucasian male, presently fifty-seven years old. Although Hagan now complains about WEA's selection of Hill over him, he served as Field Sales Manager without challenging that management decision until WEA closed its Cleveland office some four years later.

Due to the closing, most employees were not offered an opportunity to transfer to another WEA location and instead lost their jobs. WEA did, however, offer to transfer Hagan. In fact, WEA offered Hagan three options: a sales representative position in another office, a consulting arrangement, or a severance package. Hagan rejected all three options and instead filed suit against WEA, alleging violations of the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, and the Ohio Revised Code. *See* 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 2000e *et seq.*; O.R.C. §§ 4112.02 and 4112.99.

With his complaint, Hagan charges that unlawful discrimination prompted WEA to "demote" him in 1995. He also claims that impermissible discrimination precipitated WEA's failure to offer him one of three positions in other offices that were available when the Cleveland office closed in

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

1999. According to Hagan, WEA should have transferred him into a vacant Field Sales Manager position in Philadelphia. WEA instead offered that position first to Hill and then to Jeanne White, an African-American female who, like Hill, was younger than Hagan. Finally, Hagan complains that unlawful discrimination motivated WEA's refusal to offer him the position of Field Sales Manager of Black Music either in Philadelphia or in Detroit. Instead, WEA selected younger African-American women.

Finding that Hagan presented no direct or circumstantial evidence of discrimination, the district court granted WEA summary judgment on all claims.

II

Standard of Review

Summary judgment is proper if we conclude, after reviewing de novo the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" and drawing all inferences from the underlying facts in the light most favorable to the non-moving party, that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 255 (1986).

Direct Evidence of Discrimination

For Hagan to survive summary judgment on his employment discrimination claims, he must have either "present[ed] direct evidence of discrimination or introduce[d] circumstantial evidence

-3-

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

that would allow an inference of discriminatory treatment." *Carter v. Univ. of Toledo*, 349 F.3d 269,

272 (6th Cir. 2003) (internal quotation marks and citation omitted).  Direct evidence "is that

evidence which, if believed, requires the conclusion that unlawful discrimination was at least a

motivating factor in the employer's actions." *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000)

(internal quotation marks and citation omitted).  If Hagan offers direct evidence of discrimination,

the burden shifts to WEA to come forward with evidence showing it would have taken the same

actions absent the discriminatory motive.  *Id.* (citations omitted).

Hagan does not claim that he can support his age or gender discrimination allegations with

direct evidence; rather, he contends that WEA's affirmative action plan and related documents are

direct evidence from which a reasonable jury could infer race discrimination.  Although we have

found no circuit precedent on point, our sister circuits recognize the existence of an affirmative

action plan to be irrelevant to proving discrimination unless the employer acted discriminatorily

pursuant to the plan.  *See, e.g., Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095,

1110 (11th Cir. 2001) ("[T]he existence of an affirmative action plan, when combined with evidence

that the plan was followed in an employment decision, is sufficient to constitute direct evidence of

unlawful discrimination unless the plan is valid."); *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26

F.3d 968, 976 (9th Cir. 1994) ("Other circuits have held—and common sense tells us—that the mere

fact of an affirmative action plan's existence is not relevant to proving discrimination unless the

employer acted pursuant to the plan.").  Hagan offers no evidence establishing a causal connection

between the plan and his "demotion," but merely argues that a genuine issue of material fact exists

-4-

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

because the parties disagree as to the reason for WEA's actions. Hagan's unsupported statement that

such evidence exists fails to create a genuine issue of material fact.

We thus agree with the district court's conclusion that Hagan fails to stave off summary

judgment with direct evidence of discrimination.

Circumstantial Evidence of Discrimination

Hagan next contends that the district court erred by concluding that he failed to present

circumstantial evidence of discrimination. We analyze these claims under the familiar *McDonnell*

*Douglas/Burdine* burden-shifting framework. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.

1992) (applying the analysis to claims brought under Title VII, the ADEA, and Ohio law).

*1995 Claims*

Hagan's claim that he suffered a materially adverse employment action in 1995 upon his

"demotion" from Branch Sales Manager to Field Sales Manager—an element of a prima facie case

of discrimination—falters because his salary and benefits went unaltered. His proffered evidence

shows only a minor change in status and responsibility; he remained second in command of the

Cleveland office after its downgrade to a district office. We need not decide whether the district

court erred in concluding that Hagan failed to establish a prima facie case of discrimination because

even with a prima facie case showing, summary judgment would nevertheless still be appropriate

as Hagan cannot rebut WEA's non-discriminatory reasons for "demoting" him.

-5-

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

According to WEA, Schone, the person charged with filling the District Sales Manager position, did not select Hagan to head the Cleveland office because: (1) Hagan did not express real interest in running the Cleveland office; (2) the person in charge of purchasing at Camelot, WEA's largest Cleveland customer (accounting for more than 75% of WEA's business in Cleveland), asked that Hagan not head the Cleveland office; (3) the former head of the Cleveland office, Froio, had worked closely with Hagan and counseled Schone against it; and (4) Schone considered Hagan to be an ineffective leader because of his poor management of subordinates, his inadequacy in dealing with routine personnel issues, and his poor judgment (for example, Hagan dressed as Adolf Hitler at a WEA event and behaved inappropriately while drunk at WEA customer functions).

Hagan argues that the district court should not have considered WEA's fourth reason—Schone's reservations as to Hagan's ability to head the Cleveland office—because it is inadmissible hearsay evidence. Although Hagan correctly argues courts may not consider hearsay evidence on summary judgment, the district court properly considered Schone's testimony because Schone did not offer Hagan's coworkers' observations to prove the truth of the matter asserted, but for their effect on Schone, the listener. *United States v. Horton*, 847 F.2d 313, 324 (6th Cir. 1988).

Our review of WEA's proffered reasons convinces us that WEA satisfied its burden by offering legitimate, plausible reasons for Schone's decision to select someone other than Hagan as senior manager of the Cleveland office. *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir. 1986) (A "defendant need not persuade the [trier of fact] that it was actually motivated by the proffered reasons, but need only produce admissible evidence which would allow the trier of fact

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

rationally to conclude that the employment decision had not been motivated by discriminatory

animus." (internal quotation marks and citations omitted)).

The burden then shifts to Hagan to show by a preponderance of the evidence that WEA's

proferred reasons were pretextual: "(1) by showing the reasons had no basis in fact, (2) if they have

a basis in fact, by showing that they were not the actual factors motivating the [demotion], or (3) if

they were factors, by showing that they were jointly insufficient to motivate the [demotion]."

*Chappell*, 803 F.2d at 266.

Hagan first argues that WEA's proferred reasons have no basis in fact because he would have

been a good choice to head the district office. He insists that an absence of disciplinary write-ups

and a lack of criticism of his leadership skills by his subordinates suffices to show WEA's reasons

have no basis in fact. Hagan highlights the opinion of Froio, who, unlike Schone, actually observed

Hagan's work, and who, according to Hagan, "expressed no reservation about Pete Hagan as Sales

Manager, and in fact, had said that he was very comfortable with Pete Hagan, in this role."

Although Hagan may indeed have been a good choice to head the Cleveland office, our

inquiry focuses only on whether Schone's *belief* that Hagan would not be a good choice had a basis

in fact. The record on summary judgment confirms the foundation of Schone's belief. Hagan does

not dispute that Camelot contacted WEA management, including Schone, with concerns about

Hagan heading the Cleveland office. Nor does he dispute that Schone knew about his dressing as

a Nazi at a WEA event and behaving inappropriately while drunk in front of customers. Moreover,

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

even Hagan's former boss, Froio, told Schone that he thought Hagan had weak personal skills. Because any or all of these facts could have been the basis of Schone's decision, Hagan's argument that Schone's decision had no basis in fact must fail.

Hagan next contends that WEA's proffered reasons did not actually motivate his "demotion." Lacking evidence to support this contention, Hagan offers only speculation that he was "demoted" so that an African-American could head the Cleveland office. We find speculation insufficient to establish pretext.

We conclude that because Hagan presented no evidence to rebut WEA's legitimate reasons for the actions taken in 1995, he is unable to establish a jury issue about whether these reasons were merely a pretext for discrimination. Accordingly, we find that the district court properly granted summary judgment to WEA on his 1995 claims.

*1999 Claims*

Hagan contends that when WEA closed its Cleveland office in 1999, it should have considered him for both Field Sales Manager and Field Sales Manager of Black Music in Philadelphia. WEA first offered the Field Sales Manager position to Hill, who declined it. WEA then filled the position with Jeanne White, a young, African-American female who had been the long-time Field Sales Manager of Black Music in Philadelphia. WEA in turn hired Mary Ressner, also a young African-American female, to take White's previous position.

-8-

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

As a general rule, an employer who reduces its force for economic reasons need not transfer employees to other positions within the company. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 374 (6th Cir. 1999). But when an employer chooses to transfer some displaced employees, it may not impermissibly discriminate in deciding whom to transfer. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). We have held that plaintiffs claiming that their employer unlawfully discriminated against them by failing to transfer them as part of a reduction in force must proffer "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiffs] for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

Even if Hagan did proffer such evidence, this claim would ultimately fail because he presents no evidence to rebut WEA's legitimate reasons for its transfers. Raymond Milanese, the person charged with filling the Philadelphia managerial position, was personally familiar with Hill's but not Hagan's managerial abilities, as even Hagan concedes. Milanese's subjective evaluation of Hill's abilities serves as a legitimate, non-discriminatory reason for selecting Hill over Hagan for the transfer. *See Lerma v. Bolger*, 689 F.2d 589, 592 (6th Cir. 1982)

Hagan attempts to discount this proffered reason by speculating that if WEA had not brought Hill to manage the Cleveland office in 1995, then Hagan would have had the necessary relationship for Milanese to have selected him for the transfer. Such speculation has no relevance to the issue—Milanese's legitimate business reason for selecting the employee whose abilities he knew better.

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

And as far as the position of Field Sales Manager of Black Music is concerned, Hagan admitted the position required an intimate knowledge of black music and an ability to keep up with its quickly changing trends, and he himself did not like, understand, or follow today's black music. This factor, coupled with Hagan's having declined a sales job paying more than the Philadelphia job paid leaves Hagan without a basis for contending that WEA's failure to offer him the Field Sales Manager job constituted illegal racial discrimination.

Likewise, Hagan's argument that discriminatory motives led the company to deny him a transfer to Detroit lacks evidentiary support. WEA proffered its reason for failing to transfer him to serve as Detroit Field Sales Manager of Black Music—the position was never open. Patti Fullard held the position in the Cleveland office and continued to hold the same job serving the same clients when WEA transferred the job to the Detroit office. Because an employer has no duty to displace other employees in favor of an individual whose position has been eliminated by a reduction in force, WEA articulated a legitimate business reason for not offering Hagan this position. *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1118 (6th Cir. 1980).

Hagan counters that this reason lacks basis in fact because WEA had a policy or practice of allowing senior employees to "bump down" into lower paying junior positions that should have allowed him to bump down Fullard and assume her position. Yet Hagan offers as evidence of this policy only his own unsupported claim that three employees had "bumped" junior employees from their jobs, and the affidavit of one of those employees averring that, "This type of bumping is commonplace during times of downsizing." Schone, Froio, and Milanese denied knowledge of a

-10-

No. 02-3602
*Hagan v. Warner/Elektra/Atlantic Corp.*

practice or policy of bumping. Hagan's evidence does not show a clear policy of "bumping" existed, much less an impermissible denial in Hagan's case. Because WEA's proffered reason for failing to transfer Hagan to Detroit stands unrebutted, because Hagan was no more qualified to be Field Sales Manager of Black Music in Detroit than in Philadelphia, and because he was offered a higher paying sales job anyway, we assess no error by the district court on this claim either.

III.

Contrary to Hagan's assertions, there is no basis on which to overturn the district court's entry of summary judgment in favor of WEA. Accordingly, we affirm the judgment of the district court.

-11-